Filed 3/4/26  In re H.B. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re H.B., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JASON B.,<br><br>    Defendant and Appellant. | G065835<br><br>(Super. Ct. No. 23DP1200)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Daphne G. Sykes, Judge. Affirmed.

Nicole Kronberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Chloe R. Maksoudian, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the child.

\*          \*          \*

In October 2023, after testing positive for fentanyl, H.W. (Mother) gave birth to H.B. (the child). Soon after the child's birth, the Orange County Social Services Agency (the Agency) placed her with A.A. and B.A. (the Caregivers). The child continues to live with the Caregivers to this day, and she appears to be doing well.

In August 2025, the juvenile court (the court) conducted a permanency planning hearing. (Welf. & Inst. Code, § 366.26.)[1] Prior to the section 366.26 hearing, Jason B. (Father) filed a section 388 petition. Father asked the court to change the child's placement from the home of the Caregivers to the home of his mother E.D. (Paternal Grandmother).

At a combined hearing, the court denied Father's section 388 petition. The court found the child to be adoptable, and terminated parental rights as to both parents. Father's sole claim on appeal is that the court abused its discretion by denying his section 388 petition.

We affirm the order.

I.

FACTS AND PROCEDURAL HISTORY

In 2023, Mother was in jail and tested positive for THC and fentanyl. Mother was pregnant and had no prenatal care. Mother had a prior dependency case in which a child was removed from Mother's care due to her ongoing substance abuse, and her parental rights were eventually terminated. Father had a history of substance abuse and an extensive criminal history related to drug charges.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

In October 2023, Mother gave birth to the child. Shortly after the child's birth, pursuant to a custody warrant, the court ordered that the child be detained under the protection of the Agency and removed her from the physical custody of Mother and Father. At that time, the Agency attempted to reach Paternal Grandmother by phone, but the messages went straight to voicemail and the mailbox was full.

Later in 2023, the Agency placed the child with the Caregivers who indicated that if reunification with the parents should fail, then they would be interested in providing permanency for the child. Due to Mother's drug use, the child had some medical concerns, including being underweight, an issue with her left eye focusing, a high-pitched cry, and difficulty sleeping. The Caregivers took the child to weekly appointments to address her needs.

Beginning in January 2024, Father had visitations with the child that were supervised by Paternal Grandmother in her home. At a disposition hearing in March, the court found the child to be a dependent of the court and ordered reunification services. In July, the child was assessed for developmental delays and was found to be qualified for early intervention services. In September, the Agency found: "[The child] receives excellent care in her placement, [the child] appears to be well-adjusted as evidenced by reaching developmental milestones, ability to be comforted by the caregivers, and having her needs met by the caregivers." Paternal Grandmother stated that she did not want placement of the child with her at that time.

Between April and August 2024, Father failed to submit to substance abuse testing. In September, the Agency reported that both Mother's and Father's case plan compliance were "minimal." In September, the Agency recommended reunification services be terminated and that the court schedule a section 366.26 hearing. In October, Paternal Grandmother

3

admitted that Father had been incarcerated, and he had not been visiting the child for weeks; however, Paternal Grandmother had been continuing to pick up the child for purported visitations with Father. Paternal Grandmother now requested placement of the child with her for the first time. In November, the court terminated reunification services for both parents.

In January 2025, the Agency denied Paternal Grandmother's request for placement because Father was not fully moved out of the home. In March, Mother and Father's whereabouts were unknown; however, the Agency suspected that Father was still with Paternal Grandmother. In May, Paternal Grandmother was approved for Resource Family Approval (RFA) certification (placement). In June, the Caregivers continued to express their ongoing interest in providing a permanent home for the child. The Agency reported that the child was bonded to the Caregivers and their children. In July, Father filed a section 388 petition requesting that the juvenile court place the child with Parental Grandmother rather than the Caregivers.

On August 2025, the court presided over a section 366.26 hearing, combined with a hearing on the section 388 petition. Paternal Grandmother was the only testifying witness. At the conclusion of the hearing, the court denied Father's section 388 petition (Paternal Grandmother's testimony and the court's ruling will be covered in the discussion section of this opinion). As far as the section 366.26 hearing, the court found the child to be adoptable, found that no exceptions applied, and terminated parental rights as to both Mother and Father.

4

## II.

## DISCUSSION

Father claims the court abused its discretion by denying his section 388 petition, which asked the court to change the child's placement from the Caregivers to Paternal Grandmother. We disagree.

We review a juvenile court's section 388 ruling for an abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.) We do not inquire whether substantial evidence would have supported a different ruling, nor do we reweigh the evidence, nor do we substitute our judgment for that of the court. (*Ibid.*) We may reverse a court's denial of a section 388 petition only if we find the court has made ""'an arbitrary, capricious or patently absurd determination.'"" (*Ibid.*)

In this discussion, we shall: 1) review relevant legal principles concerning section 388 petitions; 2) summarize the underlying proceedings; and 3) analyze the law as applied to the facts.

*1. Relevant Legal Principles*

"Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." (§ 388, subd. (a)(1).)

"Under section 388, the petitioner must show by a preponderance of the evidence either changed circumstances or new evidence and that the proposed modification is in the best interests of the child." (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.) The best interests of the child in section 388 proceeding "are not to further delay permanency and stability in favor of

5

rewarding" the parent for his or her "hard work and efforts to reunify." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.) "'A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point, does not promote stability for the child or the child's best interests.'" (*In re Mary G.* (2007) 151 Cal.App.4th 184, 206.)

"'It is not enough for a parent to show *just* a genuine change of circumstances under [section 388]. The parent must show that the undoing of the prior order would be in the best interests of the child. [Citation.]' [Citation.] The fact that the parent 'makes relatively last-minute (albeit genuine) changes' does not automatically tip the scale in the parent's favor. [Citation.] Instead, 'a number of factors should be examined.'" (*In re D.R.* (2011) 193 Cal.App.4th 1494, 1512.)

"First, the juvenile court should consider 'the seriousness of the reason for the dependency . . . .' [Citation.] 'A second important factor . . . is the strength of the existing bond between the parent and child . . . .' [Citation.] Finally, as 'the essence of a section 388 motion is that there has been a change of circumstances,' the court should consider 'the nature of the change, the ease by which the change could be brought about, and the reason the change was not made before . . . .' [Citation.] 'While the bond to the caretaker cannot be dispositive . . . , our Supreme Court made it very clear . . . that the disruption of an existing psychological bond between dependent children and their *caretakers* is an extremely important factor bearing on any section 388 motion.'" (*In re D.R., supra,* 193 Cal.App.4th at p. 1512.)

*2. Underlying Proceedings*

Prior to the combined hearing, the Agency provided reports to the

6

court. The child had been receiving child development services. The manager of the child development program reported: "[The child] is an adorable, social, and sweet little girl who explores her environment freely. She enjoys music, tries to imitate some hand gestures, and words to songs. She shows appropriate arousal, good eye contact and joint attention to tasks. She does become frustrated easily with non-preferred tasks or activities that become more challenging, requiring verbal or tactile cues for redirection. She continues to have difficulty with visual tracking."

The program manager continued: "I have been working with [the child] at a frequency of 4x/month for physical therapy to address deficits in her gross motor skills. At this time, the child's sessions are focused on improving her ability to stand and walk without support. Her foster mother and/or foster father are consistently present and engaged during her PT sessions, and on frequent occasions, her foster siblings are present as well to engage in sessions. [The child's] foster mother provides for consistent attendance, and when cancellations are made on the part of the foster family or the therapist, foster mother readily works with the physical therapist to reschedule sessions appropriately to ensure continuity of care. [¶] During recent weeks, [the child] has shown more confidence to stand up and take unsupported steps, particularly when encouraged by her foster brother, at times walking up to 7 feet without direct assistance."

Paternal Grandmother testified that she had been having regular visits with the child since late 2023, while serving as Father's visitation monitor. Paternal Grandmother said that she has a relationship with the child, and that she is a curious and happy baby. Paternal Grandmother said that she first asked about placement when the child was about a year old. Paternal Grandmother said that at that time she lived in her father's house,

and he didn't want the child to live in the home, but he later changed his mind. Paternal Grandmother testified that she continues to live with her father and daughter. Paternal Grandmother said that if Father ever showed up unannounced she would call the police. Paternal Grandmother noted that she had been approved for placement. When asked if she had anything else to add, Paternal Grandmother testified, "I love my granddaughter. I would turn my life upside down. I would do anything for her."

After considering the evidence and the parties' arguments, the court made its ruling, as follows:

"Okay. Matter having been submitted, first of all, thank you to all attorneys for your presentation. It's been very helpful to the Court to evaluate this case from the different points of view.

"In the 388 motion to change a court order, and in this case, to place the child with her biological paternal grandmother, the Court looks at two things: Number one, has there been a change of circumstances, and, number two, is it in the child's best interest to remove her.

"Here, there has been a change of circumstances. Grandmother's house has now been approved for placement, when it was initially not approved. And there's no doubt that Grandmother would give her best to this child, loves her child, and wants this child to be a part of the biological family. [¶] The next point is, is it in the child's best interest -- in this child's best interest to move her. She's been with the caregivers all of her life. She has extraordinary medical needs, and the caregivers have met every one them. These needs have required attentiveness, time, follow-through, diligent effort, energy, and constant care. She's at a caring and attentive family who apparently has a system that has already proven to be successful. She's doing very well. She is stable.

"Therefore, the Court finds it would not be in this child's best interest to move her to a placement that has not proven to be able to give her all of the benefits that she's been receiving and, from all accounts, would continue to receive. [¶] For those reasons, the 388 motion is denied."

*3. Application and Analysis*

The court appeared to be conversant with the appropriate legal principles, as demonstrated by its analysis of the factors it was required to consider under section 388, and the court's emphasis on what was in the child's best interest. The court was also familiar with the relevant evidence, as demonstrated by its recitation of the facts involving Paternal Grandmother's changed circumstances since the date of its prior order, as well as minor's "extraordinary medical needs."

The court then made a ruling that was apparently grounded in the appropriate law and the relevant facts. (See *Small v. Superior Court* (2000) 79 Cal.App.4th 1000, 1014 ["'all exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue'"].)

In sum, we find that the court did not approach its decision in an arbitrary or capricious manner. Indeed, we find the court's analysis was well reasoned, and at the same time empathetic. While we recognize that other courts may have perhaps ruled differently, we do not see any indication that the court in this case abused its discretion. (*San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 962 [the abuse of discretion "standard is a deferential one, and an appellate court may not substitute its discretion for that of the trial court, even if it disagrees"].)

Thus, having found no abuse of discretion, we affirm the court's

9

denial of Father's section 388 petition.

Father argues that the court failed to consider the factors set forth in section 361.3. County counsel argues that this argument is forfeited because this issue was not raised during the section 388 hearing. Further, county counsel argues that section 361.3 does not apply in this case. We find that county counsel has made sound arguments in this regard.

Subdivision (a) of section 361.3 mandates that when "a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement." In assessing any relative seeking to have the child placed in their care, the court must consider eight factors enumerated in subdivision (a)(1) through (8),[2] as well as any other relevant facts, "'and exercise its independent judgment concerning the relative's request for placement.'" (*In re A.K.* (2017) 12 Cal.App.5th 492, 498.)

"Section 361.3 provides for preferential consideration of a relative's request for placement of a child with the relative early in dependency proceedings, *before the disposition order*." (*In re J.Y.* (2022) 76 Cal.App.5th 473, 477, italics added.) "If the court does not place the child with a relative who has been considered for placement *pursuant to this section*, the court shall state for the record the reasons placement with that

---

[2] Those factors include: (1) the best interest of the child; (2) the wishes of the parent, the relative, and the child, if appropriate; (3) the provisions of the Family Code regarding relative placement; (4) placement of siblings and half siblings and the well-being of any of the siblings; (5) the good moral character of the relative and any other adult living in the home; (6) the nature and duration of the relationship between the child and the relative; (7) the ability of the relative to facilitate court-ordered reunification efforts with the parents, and facilitate implementation of all elements of the case plan; and (8) the safety of the relative's home.

10

relative was denied." (§ 361.3, subd. (e), italics added.)

"Forfeiture, also referred to as 'waiver,' applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings." (*In re Dakota* (2005) 132 Cal.App.4th 212, 222.) Therefore, "when a party bears some responsibility for the claimed error, they are generally estopped from taking a different position on appeal or are deemed to have waived the error." (*City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 29.)

The disposition order in this case, which placed the child with the Caregivers, occurred in March 2024. Paternal Grandmother did not express to the Agency her interest in the placement of the child in her home until October 2024. And Father's section 388 petition requesting a change in placement was not filed until July 2025, over a year after the court's disposition order, so section 361.3 does not apply. (See *In re J.Y.*, *supra*, 76 Cal.App.5th at p. 477 ["Section 361.3 provides for preferential consideration of a relative's request for placement of a child with the relative early in dependency proceedings, *before the disposition order*"], italics added.)

Further, neither Father nor Paternal Grandmother filed a request for placement pursuant to section 361.3 at any point in the proceedings, so the court was not required to state its reasons under section 361.3 at the combined hearing. (§ 361.3, subd. (e) ["If the court does not place the child with a relative who has been considered for placement *pursuant to this section*, the court shall state for the record the reasons placement with that relative was denied"], italics added.)

In any event, although section 361.3 requires the court to state its reasons for denying relative placement under subdivision (e) for the record (when a request is made to the court under section 361.3), any failure to do so

11

is harmless where the record itself indicates that the court would not have placed the child with the relative. (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.) Where "the reasons for denying placement are clear from the evidence and discussion at the hearing and support the court's decision, the court's failure to make findings is harmless." (*Ibid.*)

In this case, we will not reverse the decision of the court placing the child with the Caregivers because the record indicates that the court would not have placed the child with Paternal Grandmother even if a timely section 361.3 application for relative placement had been filed in the court during the juvenile dependency proceedings. This was primarily due to the bond between the Caregivers and the child, as well as the Caregivers' ability to provide for the child's special needs. That is, even if we were to presume error under section 361.3, we would find the error to be harmless.

To reiterate and conclude, we cannot say that the court abused its discretion in any manner. Thus, we affirm the court's order, which denied Father's section 388 petition.

## III.

## DISPOSITION

The order is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.